17505

Elof HANSSON, Respondent, v. GENERAL INSULATION & ACOUSTICS, Appellant

(107 S. E. (2d) 41)

*Messrs. Harold Eubanks* and *William H. Townsend,* of Columbia, *for Appellant,*

*Messrs. G. Truette Smith* and *J. W. Guest,* of Columbia, *for Respondent,*

February 16, 1959.

TAYLOR, Justice.

This appeal comes from the Richland County Court wherein plaintiff sought judgment in the amount of $2,367-

.82, allegedly due and owing for acoustical tile sold and delivered to defendant. Defendant duly answered setting up a general denial and counterclaim to which plaintiff replied denying material allegations of the counterclaim and pleading an accord and satisfaction and a novation, the Statute of Frauds and defective workmanship by defendant in installing the acoustical tile in question.

The matter came on for trial before the Honorable Legare Bates, Judge of the Richland County Court and a jury, resulting in a verdict for plaintiff in the amount of $1,278.37.

Defendant now comes to this Court contending that the trial Judge erred in admitting testimony adduced on cross-examination concerning another lawsuit involving the defendant.

Mrs. Eunice W. Whichard, Treasurer of Appellant Corporation, introduced into evidence the following communication:

"Received

"855 Oct. 20 AM 8:58
"Elof Hansson Inc.

"October 17, 1955

"Mr. Nils A. Finkelson
"Elof Hansson, Inc.
"220 East 42nd Street
"New York 17, New York

"Dear Mr. Finkelson:

"With reference to the balance which you continue to hold against us, we have at last been able to start the repair and replacement on the Roosevelt School job which we discussed with you previously.

"As soon as this work is completed and we can run our costs total, we will again contact you and make every effort to clear this matter.

"However, if you prefer to handle this matter legally, we will be glad to turn the entire file over to our attorney.

"Very truly yours,
"General Insulation and
Acoustics, Inc.
"Eunice W. Whichard
"Treasurer

"EWW :cg

"P. S. We paid Simpson Logging well over $8,000.00 last month on current invoices covering quality material. We were well impressed with your American made Tile. What is your current delivery cycle?

"For over a decade—Wholesale Distributors and Applicators of:

"Materials of the Highest Character—Through Selection—

"For Home, Commerce and Industry

" 'We Sell a Good Job and Deliver A Better One' ."

We are here concerned with that part of the foregoing exhibit denominated "P.S.", it being contended that the Post Script had no relation to the controversy at bar and that plaintiff's counsel in his examination relative thereto had sought to show Mrs. Whichard to be a litigious client.

The discretion of the trial Court with respect to cross-examination is not subject to review by this court except in cases of manifest abuse or injustice. The general range and extent of cross-examination is within the discretion of the trial Judge subject, of course, to the limitations that it must relate to matters pertinent to the issue or to specific acts which tend to discredit the witness or impeach his moral character; therefore, much latitude is allowed on cross-examination and the wise discretion is vested in the presiding Judge to keep the examination within the legitimate bounds. *State v. Burnett, Jr.,* 226 S. C. 421, 85 S. E. (2d) 744; *Schreiberg v. Southern Coatings & Chemical Company, Inc.,* 231 S. C. 69, 97 S. E. (2d) 214; *A. M. Law & Co., Inc., v. Cleveland,* 172 S. C. 200, 173 S. E. 638.

In the instant case the record is not clear as to why the Post Script appeared on the exhibit, but defendant introduced the exhibit into evidence and presumably was aware of its contents. Plaintiff was clearly within its rights in making inquiries relative thereto upon cross-examination. Further, when counsel for plaintiff concluded his cross-examination and stated that he had no further questions, defendant voluntarily explained as follows:

"A. I would like to explain that that is the cancellation of the franchise only. Just for that general information and that is my knowledge of it. It has an altogether different substance entirely as from what we are talking about. I'm not familiar with the thing. I have never seen the papers, actually. Whereas I handle this and I handle the labor reports and I handled the complaints that came in on the phone, I bid the jobs, we bid the jobs each week and when we are low bidder, know that we are prejudiced, our bids have been prejudiced, on certain jobs we just don't get a hearing, but I'm not familiar with the fine points of that deal because it did involve our doing a remarkably good job with a remarkably good tile, and it being taken away from us without notice; while we were advertising their product, they gave it to someone else for more money. That's exactly what it amounts to.

Mr. Guest: As a matter of fact, the way it started was they sued you for the $8,000.00 due on the tile and you come back and counter sued for the franchise for $100,000.00, isn't that correct? A. The whole substance of the thing is the cancellation of the franchise agreement.

Q. They brought the first action on what you owed them? A. They did not bring the first action. I don't believe so.

Q. As a matter of fact, you verified the paper yourself, didn't you? A. I did not sign the papers."

Defendant had introduced the entire communication into evidence, and the cross-examination complained of had to do with its contents. It was only upon such cross-examination that the witness testified that the Post Script referred

to another matter and had no relevancy to the case at bar. Further, the witness was permitted to explain, and she voluntarily gave her version of why that portion of the exhibit had no relevancy to the case at bar.

We find no evidence that the trial Judge abused his discretion or that Appellant suffered an injustice, and are of opinion that all exceptions should be dismissed and the judgment and Order appealed from affirmed; and it is so ordered.

Affirmed.

STUKES, C. J., and OXNER, LEGGE, and MOSS, JJ., concur.