## 22030

Leonard MOULTRIE and Pearl Deas, as Co-Administrators of the Estate of Sandra D. Moultrie, Respondents-Appellants, v. MEDICAL UNIVERSITY OF SOUTH CAROLINA, a University of the State of South Carolina; Warren Y. Adkins, M.D.; Steven J. Kroll, M.D.; Jacquelyn A. Going, M.D.; Stan Woerth, M.D.; and J. D. Thomas, M.D., Respondents, of whom Medical University of South Carolina, a University of the State of South Carolina, and J. D. Thomas, M.D., are Appellants-Respondents.

(311 S. E. (2d) 730)

*Thomas Dewey Wise,* of *Wise, Cole & Pearlman,* and *Morris D. Rosen,* of *Rosen, Oberman & Rosen,* Charleston, *for appellants-respondents.*

*W. Jefferson Leath, Jr.,* of *Young, Clement, Rivers & Tisdale,* and *Wade H. Logan, III,* of *Holmes, Thomson, Logan & Cantrell,* Charleston, *for respondents.*

*Arnold S. Goodstein,* of *Goodstein, Douglas, Bowling & Phillips,* Charleston, *for respondents-appellants.*

January 18, 1984.

HARWELL, Justice:

This medical malpractice action arose out of the wrongful death of Sandra Deas Moultrie on October 13, 1978 following a surgical operation at the Medical University Hospital in Charleston, South Carolina. A Charleston County jury returned a $100,000 verdict against the Medical University and Dr. J. D. Thomas. We affirm in part and reverse and remand for a new trial.

Mrs. Moultrie was admitted to the hospital for a minor ear operation, a tympanoplasty. Dr. Stan Woerth anesthetized her with a mixture of nitrous oxide and oxygen. Dr. Woerth was assisted by a Certified Registered Nurse Anesthetist and a Student Registered Nurse Anesthetist. Dr. J. D. Thomas relieved Dr. Woerth as anesthesiologist during the procedure. Dr. Thomas was also supervising another operation nearby.

Near the end of the surgery, one of the three surgeons performing the operation requested that the student anesthetist operating the anesthesia machine turn off the nitrous oxide. The patient shortly began to experience difficulties. Dr. Thomas was summoned and discovered that the oxygen valve was off and the nitrous oxide valve on. He turned on the oxygen and attempted to resuscitate the patient. Mrs. Moultrie had suffered irreversible brain damage. She lapsed into a coma and subsequently died.

During the course of the trial, the judge granted an involuntary nonsuit to Dr. Stan Woerth and a directed verdict for the three surgeons. At the conclusion of the trial, the court directed a verdict against the Medical University on the issue of liability. The jury returned a verdict of $100,000 against Dr. Thomas and the Medical University.

Appellants, the co-administrators of Mrs. Moultrie's estate, contend that the trial court erred in prohibiting their medical expert, Dr. Greene, from testifying to the national standards of care for anesthesiologists during tympanoplasties. We agree. Since the trial of the case, we have discarded the "locality rule". In *King v. Williams,* 276 S. C. 478, 279 S. E. (2d) 618 (1981), we quoted with approval *Pederson v. Dumouchel,* 72 Wash. (2d) 73, 431 P. (2d) 973 (1967), for the proposition that "no longer is it proper to limit the definition of the standard of care which a medical doctor or dentist must meet solely to the practice or custom of a particular locality, or a geographic area." *King v. Williams,* 276 S. C. at

482, 279 S. E. (2d) at 620. In the new trial, Dr. Greene should be allowed to testify regarding a national standard of care for anesthesiologists during this type of surgery.

Dr. Thomas asserts that he is protected under the immunity granted to "employees" of state-supported hospitals in S. C. Code Ann. § 44-7-50 (1982). This argument lacks merit. Although Dr. Thomas is a Professor of Anesthesiology employed by the Medical University, he is a "licensed physician" under the statute. Thus, he is not covered by any immunity.

The trial judge also erred in several aspects of the trial relating to damages. During the cross-examination of appellants' economic loss expert, Dr. Oliver Wood, respondents' counsel inquired whether Wood's figures were based upon Mr. Moultrie remaining single. Although the legitimate range of cross-examination is broad, *Hansson v. General Insulation and Acoustics,* 234 S. C. 177, 107 S. E. (2d) 41 (1959), we have held that evidence of subsequent remarriage of a spouse is not admissible in a wrongful death action on the issue of a widow or widower's damages. *Smith v. Wells,* 258 S. C. 316, 188 S. E. (2d) 470 (1972). We recently held this evidence to be likewise inadmissible in a survival action in *Wooten v. Amspacher,*S. C., 307 S. E. (2d) 232 (1983). Here, questions as to the effect on damages of a future remarriage by the surviving spouse were not proper.

An additional error relating to damage was that the jury charge was misleading. It failed to make clear that the statutory limit of $100,000 damages found in S. C. Code Ann. § 44-7-50 (1982) applies only to the Medical University and not to Dr. Thomas.

We affirm the directed verdict in favor of the three surgeons. We additionally affirm the directed verdict against the hospital. Appellants did not except to the involuntary nonsuit granted to Dr. Woerth; nor have they argued this point in their brief. We therefore affirm his dismissal from the case.

We remand for a new trial to determine Dr. Thomas' liability and damages, if any, and the appropriate damages against the Medical University. In light of our disposition of the above issues, it is not necessary to discuss appellants' other assertions of error.

Affirmed in part; reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.